Perkins *v.* Cottrell.

---

MARIA PERKINS *vs.* J. G. COTTRELL and others.

The second section of the act of May, 1848, for the more effectual protection
of the property of married women, was intended to apply only to property
acquired after it took effect, and should not be so construed as to have a
retroactive operation.

In 1838 the plaintiff, a feme sole, being the owner of a house and lot, inter-
married with E. H. P. During the same year E. H. P. assigned all his right,
title and interest in the property to assignees, for the benefit of his creditors.
They subsequently conveyed their interest to W. H. P., and the latter, in
1842, conveyed his title and interest to the plaintiff. *Held,* that the assign-
ment of W. H. P.'s interest in the property to the plaintiff was in effect a re-
assignment to her husband, inasmuch as it gave him the same right which
he possessed before he assigned; and that a judgment recovered against
him by the defendants in 1840, was a lien upon his interest in the property.

*Held also,* that an injunction would not be granted, on the application of the
wife, to prevent a sale of the house and lot under an execution issued upon
the defendant's judgment.

DEMURRER to complaint. In 1838, the plaintiff was the owner, by devise from her late husband, Hubbard Turner, of a house and lot in the village of Geneseo, valued at $2500. In the year 1840, and while such owner, she intermarried with Elijah H. Perkins, and during the same year her husband, Elijah H. Perkins, assigned all his right, title and interest in said property to William J. Hamilton and Chauncey Metcalfe, for the benefit of his creditors. The assignees afterwards conveyed their interest to William H. Perkins, who on the 24th day of May, 1842, conveyed all his right, title and interest in and to the same property, to the plaintiff; and the latter had ever since had the entire and exclusive control thereof, and had received to her own use the rents, issues and profits thereof; and continued to have such control, and to receive the rents with the assent of her husband, who never had claimed and did not now claim any right or interest whatever in or to the said premises.

In May, 1848, after the act for the more effectual protection of the property of married women, (*Laws of* 1848, *ch.* 200,) went into effect, the said E. H. Perkins, the husband of the plaintiff, became indebted to the defendants Cottrell and others, and in Dec. 1840, they recovered judgment for such indebtedness, and sued out execution thereon and advertised all the right, title and interest of the said Elijah H. Perkins in said property, *jure uxoris*, for sale on such execution. The complaint set out the foregoing facts at length, and asked for a perpetual injunction, &c. to prevent such sale; and also asked that the said property might be adjudged free and clear from any lien by virtue of said judgment, and all judgments which might be obtained against said Elijah H. Perkins, the husband of the plaintiff, for any debt contracted by him since the act before mentioned took effect.

The defendants demurred to the complaint, for the reason, among others, that it did not state facts sufficient to constitute a cause of action, &c.

*S. H. Hammond*, for the defendants.

*James Wood, jun.* for the plaintiffs.

*By the Court,* WELLES, J. The defendants should have judgment on the demurrer, for the following reasons:

1. The second section of the act of 1848 (*ch.* 200) was intended to apply only to property acquired after its passage and taking effect, and should not be so construed as to have a retroactive operation. While the plaintiff was the owner of the house and lot in question, she married Elijah H. Perkins, whose interests the defendants are seeking to acquire, or to sell on their execution. This was before the passage of the act. By the marriage, the husband became vested with an estate in the premises for at least the joint lives of himself and wife, and during his life in case of issue. That was an interest which might be sold on execution. Afterwards the husband assigned his interest to W. H. Perkins, who subsequently, and in May, 1842, assigned such interest to the plaintiff. This was in effect a reassignment to the husband, because it gave him the same right which he possessed before he assigned, and which he continued to hold until after the Cottrells and White obtained their judgment, and which was subject to the lien of such judgment. That the plaintiff has had the control, and received to her own use the rents, &c. by the husband's consent, does not, in my opinion, vary the question; because he had the right at any time to refuse such consent and to assume the control and take the rents, when he thought fit. It was a vested right which was not taken away or destroyed by a temporary relinquishment of it to his wife.

2. If it was the intention of the act to apply to property acquired by the wife before and held by her at the time of its taking effect, it was void, as taking away a vested right of the husband, which could not be done without his consent, or by judgment of law; and was against the constitution of the United States, as impairing the obligation of the marriage contract between the plaintiff and her husband; and was also against the spirit of the state constitution, which declares that no person shall be deprived of life, liberty or property, without due process of law.

3. I can perceive no occasion for this action. No sufficient ground is shown for asking for the relief prayed for, on the sup-

position that the judgment is not a lien. If the ground assumed in behalf of the plaintiff be true, there is no such cloud on the plaintiff's title as to justify the interposition of the equity powers of the court for its removal. If the judgment is in fact a lien, the judgment creditor should have the benefit of it. If it is not a lien, it is by reason of the act, and the plaintiff will not be injured by the sale, nor her title be put in jeopardy. The cases where courts of equity have interfered, are where the lien was apparently valid, or colorable at least.

Judgment for the defendants on the demurrer.

[MONROE GENERAL TERM December 2, 1851. *Welles, Johnson* and *Taylor,* Justices.]